Filed 11/24/15  P. v. Rivera CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B258307 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BA410949) |
| GABRIEL MARTINEZ RIVERA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Henry J. Hall, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Gabriel Rivera challenges the sentence imposed on his convictions for a lewd act upon a child, continuous sexual abuse, and aggravated sexual assault of a child. He contends the trial court, in imposing the upper term with respect to the principal determinate term and ordering consecutive sentencing, contravened his right to a jury trial under the Sixth and Fourteenth Amendments of the United States Constitution. We reject his contention and affirm.

## RELEVANT PROCEDURAL HISTORY

On July 15, 2013, an information was filed charging appellant with multiple offenses under the Penal Code against two female children, E.M. and M.M.[1] Regarding E.M., the information alleged in counts 1, 2, and 7 that between February 6, 2012, and February 6, 2013, and on April 6, 2013, appellant engaged in a lewd act upon a child (§ 288, subd. (c)(1)). Regarding M.M., the information alleged in counts 3, 5, and 6 that between November 17, 2007, and November 16, 2008, appellant engaged in a forcible lewd act upon a child (§ 288, subd. (b)(1); count 3), continuous sexual abuse (§ 288.5, subd. (a); count 5), and aggravated sexual assault upon a child (§ 269, subd. (a)(1); count 6). Accompanying the charge of a forcible lewd act upon a child (count 3) were special allegations that appellant used force, violence, duress, menace, and fear of bodily injury, and that the victim was less than 14 years old. In addition, accompanying all the counts -- except the charge of aggravated sexual assault upon a child (count 6) -- were special allegations that appellant committed the offense against more than one

---

[1] All statutory citations are to the Penal Code.

2

victim.  Appellant pleaded not guilty to all the counts and denied the special allegations.

A jury found appellant guilty of a lewd act upon a child and a forcible lewd act upon a child, as charged in counts 1 and 3, and found true the accompanying special allegations.  The jury also found appellant guilty of continuous sexual abuse and aggravated sexual assault upon a child, as charged in counts 5 and 6, but found the accompanying allegations not true.  The jury otherwise found appellant not guilty of the offense charged in count 7, and was unable to reach a verdict regarding the offense charged in count 2.  After declaring a mistrial with respect to count 2, the court dismissed that count at the request of the prosecution.  The trial court sentenced appellant to an aggregate term of 31 years and 8 months to life.

## FACTUAL BACKGROUND

A. *Prosecution Evidence*

1. *Offenses against M.M. (Counts 3, 5, and 6)*

M.M. was born in El Salvador in 1994.  In 1998 or 1999, her mother emigrated to the United States.  In 2006, M.M. also arrived in the United States and began living with her mother in an apartment in Los Angeles.  Also residing in the apartment was appellant, who was her step-father, as well as four half-sisters.  M.M. had never met appellant before travelling to the United States.

Because M.M.'s mother worked a night shift, appellant was generally the sole adult in the apartment at night.  M.M. shared a bed with her four half-sisters.  Appellant began entering M.M.'s room while she slept and touched her thighs and breasts.  On one occasion, she awoke and discovered that her pajamas and

underwear had been removed. According to M.M., appellant touched her every night, except when her mother was present.

When M.M. and her family moved into new apartment, appellant initially touched her less often. She was then "13 going on 14," and had her own bedroom. Appellant nonetheless repeatedly directed her to sleep with her sisters. He began entering their bedroom, lying down on the bed, positioning himself behind her, and hugging her. According to M.M., appellant engaged in this conduct "a lot of times." Some of her half-sisters saw the misconduct.

On one occasion, after an argument with appellant, M.M. attempted to sleep in a bedroom with her two youngest half-sisters. Appellant entered the room, started to take off her clothes, separated her legs while she lay on her stomach, and positioned himself on top of her. When she fought back, he removed her underwear, held her forcibly, and inserted his penis in her vagina. He then left the bedroom.

Because M.M. was not close to her mother, M.M. did not disclose the incident to her. After two or three weeks, she told her mother only that appellant "was doing things" to her, and asked for a pregnancy test. M.M.'s mother obtained a pregnancy test, which was negative. When M.M.'s mother confronted appellant, he denied any misconduct. Appellant and M.M. never discussed the incident, and for a period, he only occasionally tried to touch M.M. while she slept.

Approximately two months later, M.M.'s younger sister E.M. and her younger brother arrived from El Salvador. After the family moved into a new residence, appellant entered her room repeatedly at night and hugged her. When M.M. was 16, he had penetrative sex with her twice a week. That conduct continued until she turned 18, when she moved away from her family residence.

4

After learning that appellant was sexually abusing E.M., M.M. reported appellant's misconduct to the police. In May 2013, appellant was arrested.

2. *Offense Against E.M. (Count 1)*

E.M. was born in El Salvador in 1998. In 2008, she arrived in the United States with her brother and began living with her mother and appellant. A year later, she saw appellant enter M.M.'s bedroom at night and touch M.M. while she slept. After that incident, when E.M. was 13, appellant began to touch her at night while she was in bed. According to E.M., that conduct occurred 10 to 15 times.

When E.M. was 14 or 15, appellant again touched her at night while she slept, and also "hugged" her from behind while she was in the kitchen. He also entered her bedroom and tried to grab her hands in order to touch her, but she resisted, and he left the room. Later, on another occasion, he entered her room, grabbed her, and kissed her while trying to lie on top of her. When E.M. directed him to leave her room, he complied. A few days later, she related the incident to a teacher at her school.

B. *Defense Evidence*

Los Angeles County Sheriff's Department Deputy Sheriff Susan Gilpin testified that in March 2014, after appellant's arrest, M.M. and E.M. told her that they did not want the action against appellant to continue. They said that the action was causing financial burdens for their household. Later, M.M. also told Gilpin that the action was disrupting her efforts to obtain an immigration visa and interfering with her classes.

## DISCUSSION

Appellant challenges his sentence on the ground that it contravened his Sixth Amendment and Fourteenth Amendment rights to a jury trial. The trial court imposed a term of 15 years to life for count 6 (aggravated sexual assault upon a child). The court further identified count 5 (continuous sexual abuse) as the principal determinate term, imposed the upper term of 16 years for that offense, and directed that the upper term be served consecutive to the sentence for count 6, together with a consecutive term of 8 months for count 1 (lewd act upon a child).[2] In selecting the upper term for count 5 and ordering consecutive sentences, the court found as aggravating factors, inter alia, that the victims were "particularly vulnerable" (Cal. Rules of Court, rule 4.421(a)(3)), and that appellant had taken advantage of a position of trust to commit the offenses (*id.,* rule 4.421(a)(11)). Appellant argues that because those findings were not reflected in the jury's verdicts and special findings, the court's decisions to impose the upper term and consecutive sentences contravene *Apprendi v. New Jersey* (2000) 530 U. S. 466 (*Apprendi*), *Blakely v. Washington* (2004) 542 U.S. 296 (*Blakely*), and *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*).

Appellant's contentions fail in light of decisions by the California Supreme Court and the United States Supreme Court after *Apprendi*, *Blakely*, and *Cunningham*. In *Cunningham*, the United States Supreme Court held that under the then-effective version of California's determinate sentencing law (DSL), a defendant was entitled to a jury trial on the facts supporting the selection of the upper term, with the exception of those facts regarding the defendant's recidivism that the trial court may determine under *Apprendi*. (*Cunningham*, *supra*, 549 U.S.

---

[2] The court also imposed and stayed a 6-year term for count 3 (§ 654).

at pp. 281-282.)  Following *Cunningham*, the Legislature reformed the DSL. (*People v. Towne* (2008) 44 Cal.4th 63, 75, fn. 2.)  In *People v. Sandoval* (2007) 41 Cal.4th 825, 850 (*Sandoval*), our Supreme Court concluded that those amendments cured any constitutional deficiency in the DSL regarding the selection of the upper term founded on *Apprendi*, *Blakely*, and *Cunningham*.  (See also *People v. Black* (2007) 41 Cal.4th 799, 815-816 (*Black*).)  As appellant was sentenced pursuant to the reformed DSL, we reject his contention regarding the court's imposition of the upper term on count 5.

Appellant's contention with respect to consecutive sentencing is similarly defective.  In *Oregon v. Ice* (2009) 555 U.S. 160, 167-170 (*Ice*), the United States Supreme Court held that state trial courts may determine facts supporting the imposition of consecutive sentences without contravening *Apprendi*, *Blakely*, or *Cunningham*.  Our Supreme Court has also so concluded.  (*Black*, *supra*, 41 Cal.4th at pp. 821-823; *People v. Capistrano* (2014) 59 Cal.4th 830, 884.)

Appellant maintains that *Sandoval* and *Ice* are wrongly decided, and invites us to disagree with them.  As we are bound by the determinations of the United States Supreme Court and the California Supreme Court regarding these matters, we decline to do so.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  In sum, the trial court did not violate appellant's right to a jury trial under the Sixth and Fourteenth Amendments.

.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

WILLHITE, Acting P. J.

COLLINS, J.