**STOP HILLARY PAC,**
**et al., Plaintiffs,**

**v.**

**FEDERAL ELECTION COMMISSION,**
**Defendant.**

**Case No. 1:15–cv–1208–GBL–IDD**

United States District Court,
E.D. Virginia,
Alexandria Division.

Signed 12/21/2015

Dan Backer, Christina Paulina Sirois, DB Capitol Strategies PLLC, Michael

Thomas Morley, Coolidge-Reagan Foundation, Washington, DC, Alexandria, VA, for Plaintiffs.

Esther Dvorah Gyory, Federal Election Commission, Jacob Stephen Siler, Gibson Dunn & Crutcher LLP, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

Gerald Bruce Lee, United States District Judge

THIS MATTER is before the Court on Plaintiffs STOP Hillary PAC's and Dan Backer's Motion for Preliminary Injunction (Doc. 3). Plaintiffs' have launched a facial constitutional challenge to Federal Election Commission regulation 52 U.S.C. § 30102(e)(4), contending that it restricts Plaintiffs' free speech, in violation of the First Amendment. *Id.* Plaintiffs' seek a preliminary injunction prohibiting Defendant Federal Election Commission ("FEC") from enforcing 52 U.S.C. § 30102(e)(4)—a statutory disclosure requirement which prohibits political committees from using a candidate's name in its title. In support of its motion, Plaintiffs' seek an order enjoining the FEC from pursuing any adverse administrative, civil, or criminal action against Stop Hillary PAC or Dan Backer, based on Stop Hillary PAC's name, throughout the duration of this lawsuit. *Id.* The FEC responds that 52 U.S.C. § 30102(e)(4), as a disclosure regulation, is not a content based restriction on free speech and does not violate the First Amendment because the regulation is intended to avoid voter confusion about whether a PAC is authorized by a political candidate. (Doc. 25). Additionally, the FEC contends that even an oppositional PAC, like Plaintiffs are prohibited from using a political candidate's name because some voters may be misled into confusion that an oppositional PAC is really in support of former Senator and Secretary of State Hillary Rodham Clinton's opponent, thus still creating voter contusion. *Id.*

■ The issue presented is whether Plaintiffs STOP Hilary PAC and Dan Backer have shown likelihood of success in showing that 52 U.S.C. § 30102(e)(4), is a restraint on speech and thus violates the First Amendment. A party "seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir.2011).

The Court holds that Plaintiff has not shown the first prong required to obtain a preliminary injunction, that is, likelihood of success on the merits. Plaintiffs' have not shown that 52 U.S.C. § 30102(e)(4), is a restraint on speech or was enacted because of the content of speech. Plaintiffs' have not shown that the existing regulations prohibit Plaintiffs from running their "Stop Hillary" PAC website, social media, electronic and print oppositional materials. The only FEC restriction in place is that the regulations prohibit the PAC from using a political candidate's name in the name of the PAC. The regulation supporting 52 U.S.C. § 30102(e)(4) allows precisely the type of oppositional speech Stop Hillary PAC and Backer seek. Additionally, 52 U.S.C. § 30102(e)(4) is sufficiently tailored to allow Stop Hillary, an unauthorized PAC, to include the name of a candidate in the title of a special project name or other communication if the title clearly and unambiguously shows opposition to the named candidate.

Thus, having reviewed the pleadings, heard oral arguments, and considered the relevant case law, the Court holds that, based on the facts available at this stage,

Plaintiffs have not met all four prongs required to warrant granting the extraordinary remedy of ordering a preliminary injunction. The Court denies Plaintiffs' Motion for Preliminary Injunction.

## I. BACKGROUND

Plaintiffs STOP Hilary PAC and Dan Backer ("Plaintiffs") brings this civil action against Defendant Federal Election Commission ("Defendant") contesting the constitutionality of § 30102(e)(4), which prohibits a Political Action Committee ("PAC") from using a political candidate's name in its title. 52 U.S.C. § 30102(e)(4). Specifically, Plaintiffs' claims assert that § 30102(e)(4), both on its face and as applied to political committees with names that unambiguously oppose a federal candidate, violates the First Amendment and the Equal Protection Component of the Due Process Clause.

Stop Hillary PAC is a unauthorized and non-connected hybrid political committee that its Treasurer, Dan Backer, and others formed on May 16, 2013, by filing a Statement of Organization with Defendant Federal Election Commission ("FEC"). *See* Declaration of Dan Backer in Support of Plaintiffs' Motion for Preliminary Injunction (hereafter, Backer Decl.); *see also* Compl., Ex. 1. The Statement of Organization listed "Stop Hillary PAC" as the PAC's name, and Dan Backer as its Treasurer and custodian of records. Backer Decl., Ex. 1.

Stop Hillary PAC has operated continuously for the past two years and four months, since its founding, in pursuit of its mission: to ensure that Hillary Clinton, former United States Senator and Secretary of State, "never becomes President of the United States." Backer Deck, Ex. 2. At the time Backer registered the committee with the FEC, he "was aware" of the Act's "prohibition on including candidate names in the names of PACs," but believed Hillary Clinton would not seek the 2016 Democratic Party nomination for the office of President. (Compl. ¶ 13.). When Backer formed Stop Hillary PAC, Hillary Clinton was not a candidate for federal office. Mtn. for Prelim. Injun. at 2.

## II. STANDARD OF REVIEW

To obtain a preliminary injunction, the plaintiff must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council Inc.*, 555 U.S. 7, 129 S.Ct. 365, 374–76, 172 L.Ed.2d 249 (2008); *The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355, 355 (4th Cir.2010) (reissuing *Real Truth About Obama*, 575 F.3d 342, 345–47 (4th Cir.2009)).

## III. DISCUSSION

a) *Section 30102(e)(4) of Title 52 of the U.S.Code is a Well–Established Law, Used to Help the Voting Public Decipher Between Authorized and Unauthorized Political Action Committees for the Last 35 Years.*

A party "seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir.2011). Each of these four prongs "must be satisfied as articulated" before a court can grant a motion for preliminary injunction. *Real Truth About Obama, Inc. v. EEC*, 575 F.3d 342, 347 (4th Cir.2009) *("RTAO")*, *vacated by* 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010), *reinstated in relevant part by* 607 F.3d 355 (4th Cir.2010).

Plaintiffs bear the burden of proving each prong. *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). For election cases in particular, preliminary injunctions are " 'disfavored' " and require the movant to " 'satisfy an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in movant's favor.' " *Cornwell v. Sachs*, 99 F.Supp.2d 695, 704 (E.D.Va.2000) (quoting *Tiffany v. Forbes Custom Boats, Inc.*, 959 F.2d 232 (table) (4th Cir.1992)). More importantly, "[c]onsiderations specific to election cases" weigh even further against the issuance of injunctions. *Purcell v. Gonzalez*, 549 U.S. 1, 4–5, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006) (per curiam) (vacating lower court's injunction against enforcement of election statute *and noting potential for pre-election injunctions to cause confusion among voting public*); *id.* ("[c]ourt orders affecting elections ... can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase.).

Here, Plaintiffs contend that they meet all four prongs required for a preliminary injunction and thus, their motion should be granted. (Doc. 3). However, the Court holds that Plaintiffs are unlikely to succeed on the merits of their claim—the first prong required before a court can grant a motion for preliminary injunction. The statute Plaintiffs contend is unconstitutional, 52 U.S.C. § 30102(e)(4), has been in use for 35 years. Federal Election Campaign Act Amendments of 1979, Pub.L. No. 96–187, § 102, 93 Stat. 1339, 1346 (1980); *see also* 52 U.S.C. § 30102(e)(4). What's more, the statute simply requires each political candidate to ensure that the candidate's official committee includes the candidate's name. *See* 52 U.S.C. § 30102(e)(4).

More precisely, 52 U.S.C. § 30102(e)(4) states:

The name of each authorized committee shall include the name of the candidate who authorized such committee under paragraph (1). *In the case of any political committee which is not an authorized committee, such political committee shall not include the name of any candidate in its name.* *Id.* (emphasis added).

Naturally following this requirement that candidates include their name in the title of their official PAC, Congress amended 52 U.S.C. § 30102(e)(4) to include the "Name Prohibition," statutorily mandating that "any political committee which is *not* a [candidate's] authorized committee ... shall *not* include the name of any candidate in its name." *See Id.* This amendment to § 30102(e)(4), requiring that only authorized committees bear the name of a candidate, (hereinafter "Name Prohibition,") was enacted in 1980 and has remained settled law ever since. *See* Federal Election Campaign Act Amendments of 1979, Pub.L. No. 96–187, § 102, 93 Stat. 1339, 1346 (1980). Following § 30102(e)(4), the FEC *implemented* the name identification requirement in a regulation largely echoing the statutory provision. 11 C.F.R. § 102.14(a)–(b) (1980).

▮ The purpose of § 30102(e)(4), including its Name Prohibition, is simple: to alleviate the constant public confusion surrounding Political Action Committees ("PACs"). Senate Rules and Admin. Comm., Hrg. on Amending the FECA of 1971, as Amended, 96th Cong., 1st Sess., 23 (July 13, 1979); *see also Common Cause v. FEC*, 842 F.2d 436, 447 n. 31 (D.C.Cir.1988) (recognizing that § 30102(e)(4) was enacted to "prevent confusion arising from misleading committee names"). As the FEC has consistently noted, prior to § 30102(e)(4)'s enactment, in many cases, unauthorized PACs would

contain the name of a candidate, yet not actually be authorized by—or even endorsed by—the named candidate. *See* Doc. 25 at 4–5. Nevertheless, given the candidate's name in the title of the PAC, the voting public would mistake such unauthorized PACs as a candidate's *official* authorized PAC, resulting in misdirected campaign contributions and increased voter confusion. *See* Doc. 25–1, Sadio Declaration, Ex. F) (reporting, from the Center for Public Integrity, "numerous instances" of donors "who believed they were giving to the Sanders campaign" when they actually contributed to an unauthorized PAC(s) because the respective PAC's websites contained titles such as "Ready for Bernie Sanders 2016," "Bet on Bernie 2016," and "BET ON BERNIE!"; *see also* Doc. 25–1, Sadio Declaration, Ex. D (quoting Plaintiff Dan Backer's own recognition that a PAC who's official title bore the name "Stand with Rand" presented "a *legitimate basis for confusion in the name*" and could "*interfere with Rand Paul's messaging*" and thus, deciding that "*a change was appropriate.*"); *id.* ("Several Sanders supporters confirmed they donated to Americans Socially United thinking the money was going to Sanders' campaign.").

In 1992, prompted by concern about "the potential for confusion or abuse in . . . situation[s] where an unauthorized committee uses a candidate's name in the title of a special fundraising project," the FEC promulgated a Notice of Proposed Rulemaking ("NPRM") with proposed amendments to 11 C.F.R. § 102.14, the regulation implementing § 30102(e)(4). FEC, *Special Fundraising Projects by Political Committees,* 57 Fed.Reg. 13,056, 13,057 (Apr. 15, 1992) (the "1992 NPRM"). Following the receipt of comments responding to the 1992 NPRM, and consideration of "the entire rulemaking record," the FEC decided "to adopt in its final rule a *ban* on the use of candidate names in the titles of all communications by unauthorized committees" (the "Special Projects Name Regulation"). FEC, *Special Fundraising Projects and Other Use of Candidate Names by Unauthorized Committees,* 57 Fed.Reg. 31,424, 31,425 (July 15, 1992) (the "1992 Explanation and Justification").

The 1992 Explanation and Justification explained that, the Commission "ha[d] become more concerned about the potential for confusion or abuse when an unauthorized committee uses a candidate's name in the title of a special fundraising project" because "a person who receives such a communication may not understand that it is made on behalf of the *committee* rather than the *candidate* whose name appears in the project's title." *Id.* The Commission further stated that, in these instances, "it is possible . . . that potential donors think they are giving money to the candidate named in the project's title, when this is not the case." *Id.* at 31, 424. The FEC also pointed out that, in the years leading up to the promulgation of the Special Projects Name Regulation, the use of candidate names in the titles of projects or other unauthorized communications ha[d] *increasingly become a device for unauthorized committees to raise funds or disseminate information. Id.*

Plaintiffs, acknowledging the purpose and background of § 30102(e)(4), contend that the rationale behind the Name Prohibition does not apply to them because "[n]either the FEC nor the Clinton campaign has identified even a single individual anywhere in the nation who even momentarily suspected that Stop Hillary PAC might be Clinton's official authorized campaign committee, or that Stop Hillary PAC was trying to facilitate Clinton's effort to become President." (Doc. 3–1, Plts. Mem. in Support of Mtn. at 9). However, this argument fails because it does not address the fact that, even with an unambiguously opposed PAC title, the possibility of public

confusion *still exists.* In other words, if § 30102(e)(4)'s sole purpose is to prevent public confusion surrounding PACs, Plaintiffs' argument that an unambiguously opposed PAC title could not possibly be construed as *supportive* of the candidate named in the PAC's title, does nothing to address the possibility that members of the public would see the PAC unambiguously opposing one candidate—for example "Stop Hillary"—and mistakenly get the impression that the PAC was in fact an authorized PAC supporting one of Hillary Clinton's *opponents.* The very fact that such confusion is still likely, is exactly why § 30102(e)(4)'s mandate should not be disturbed. Instead, Plaintiffs are free to express their opposition to Hillary Clinton, or any other candidate, by using her name in any of the various ways outlined by § 30102(e)(4).

For example, in 1994, the FEC promulgated a new exception to the Special Projects Name Regulation. *See* FEC, *Special Fundraising Projects and Other Use of Candidate Names by Unauthorized Committees,* 59 Fed.Reg. 17, 267 (April 12, 1994) (the "1994 Explanation and Justification"). This exception, which remains in place today, provides that "[a]n unauthorized political committee *may* include the name of a candidate in the title of a special project name or other communication if the title clearly and unambiguously shows opposition to the named candidate" (the "Opposition Exception" and, collectively with § 30102(e)(4) and the Special Projects Name Regulation, the "Name Identification Requirement"). *Id.* at 17, 269. Reiterating the same rationale for the 1992 Explanation and Justification for the Special Projects Name Regulation—"substantial evidence that potential contributors often confuse an unauthorized committee's registered name with the names of its fundraising projects, and wrongly believe that their contributions will be used in support of the candidate(s) named in the project titles,"—the FEC instituted the Opposition Exception, recognizing *"that the potential for fraud and abuse is significantly reduced in the case of" special project names clearly expressing opposition to the named candidate," Id.* at 17, 267–69.

Nevertheless, while considering the statute's purpose of reducing voter confusion, and simultaneously noting that such concern is lower in PACs that unambiguously oppose a candidate, the FEC did not push to have the Opposition Exception apply to unauthorized PAC *titles* as well. Instead, the Opposition Exception intentionally applies only to Special Projects. *See* 11 C.F.R. § 102.14. This affirms the Court's finding that, even for PACs whose titles unambiguously oppose a candidate, the Name Prohibition is still necessary to prevent public confusion that will inevitably result from seeing a candidate's name in the title of an unauthorized PAC. Given this clear and continued possibility of confusion with unauthorized PACs using candidate's names, the Court sees no justification for, right before an election, disrupting a law that is grounded in ensuring the political process is fair and easily understood by the voting public.

*b) Section 30102(e)(4) is Not a Content Based Restriction on Speech and Thus is Not Reviewed Under a Strict Scrutiny Standard.*

 Plaintiffs are unlikely to succeed in their challenge to the constitutionality of § 30102(e)(4) because the statute is not content based restriction on speech. A restriction is content based when it "target[s] speech based on its communicative content." *Reed v. Town of Gilbert, Ariz.,* —— U.S. ——, 135 S.Ct. 2218, 2226, 192 L.Ed.2d 236 (2015). In other words, if a law applies to particular speech because of the topic discussed or the idea or message

expressed, the commonsense meaning of the phrase "content based" requires a court to consider whether the regulation of speech on its face draws distinctions based on the message a speaker conveys. *Id.* Such laws are "presumptively unconstitutional" and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *Id.*

Here no such restriction exists. Though Plaintiffs argue that § 30102(e)(4)'s Name Prohibition is content based and thus requires strict scrutiny, the Court is not convinced. Section 30102(e)(4) "do[es] not prevent anyone from speaking," *See Citizens United,* 558 U.S. at 366, 130 S.Ct. 876 (quoting *McConnell,* 540 U.S. at 201, 124 S.Ct. 619). To the contrary, under § 30102(e)(4) and its supporting regulation, Plaintiffs, and any other unauthorized PAC like it, are entirely free to discuss candidates—even by using a candidate's name—throughout their websites, solicitations, special projects, and various other communications, "if the title clearly and unambiguously shows opposition to the named candidate." 11 C.F.R. § 102.14(b)(3). In fact, the *only* area Plaintiffs are not allowed to use the name Hillary, or any other candidate's name, is in the official and registered *title* of the unauthorized PAC—a fact even Plaintiffs admit. (Doc. 3–1 at 8). This very narrow Name Prohibition is simply the inverse of § 30102(e)(4)'s requirement that *candidates* avoid voter confusion, by including the candidate's name in the title of its authorized PAC, signifying to the public that the PAC is in fact, endorsed by the

candidate. 52 U.S.C. § 30102(e)(4). This narrow and specific requirement of candidates does not prohibit speech, rather, it limits potential confusion about which person, group, or candidate the PAC represents, thus giving public voters to confidence to contribute, support, or oppose the PAC accordingly.[1] *Citizens United,* 558 U.S. at 310, 130 S.Ct. 876. The Name Prohibition exists solely to ensure that critical aspect of transparency is preserved.

Thus, contrary to *Reed,* § 30102(e)(4) is not a content based restriction because it does not "target[ ] speech based on its communicative content." *Reed v. Town of Gilbert, Ariz.,* —— U.S. ——, 135 S.Ct. 2218, 2226, 192 L.Ed.2d 236 (2015). Rather, it allows *all* forms of a PAC's political speech, similar to the type of speech Plaintiffs are currently using to oppose a candidate, with a limited reiteration that candidates—and candidates alone—are required to disclose their names in the titles of their authorized PACs. Unauthorized PACs, on the other hand, though admittedly restricted from also using candidates' names in their titles, are not restricted from expressing the *very same speech* in *every other area of their PAC's methods of communication.* Here, Plaintiffs' use of "Stop Hillary" in *all* of its communications, with the exception of its use as a PAC title, demonstrate that PACs similarly opposing candidates have extensive freedom to express opposition to a candidate in nearly whatever form it desires.

In fact, § 30102(e)(4) and its subsequent regulation, § 102.14(b)(3), demonstrate the

---

1. "[S]ubsection (e)(4) is directed *solely* at disclosure of whether a political committee that solicits funds from the public is part of the authorized campaign machinery of a candidate," and that the committee corresponds with FECA's provision to "clarify[ ] for readers and potential contributors the candidate authorization status of the political commit-

tees who sponsor advertisements and fund solicitations." (noting that "the avowed purpose" of the statute is "to eliminate confusion"); *see also Pursuing Am.'s Greatness v. Fed. Election Comm'n,* 132 F.Supp.3d 23, 28–29 (D.D.C.2015) (quoting *Common Cause,* 842 F.2d at 440–42).

extent of § 30102(e)(4)'s statutory flexibility in a way that can only be interpreted as intentional. Section 30102(e)(4) grants unauthorized PACs, who unambiguously oppose candidates, the freedom to use almost *any* form of communication to express opposition to a candidate. As this Court has already noted, the 1994 the exception to subsection 102.14(b), granted unauthorized committees more flexibility to use the name of a candidate in the title of a special project name or other communication "if the title clearly and unambiguously shows opposition to the named candidate." *See supra* pp. 3–5, 127 S.Ct. 5; *see also* 11 C.F.R. § 102.14(b)(3). In addition to this large exception to § 30102(e)(4) "[u]nauthorized committees remain free to discuss candidates throughout the[ir] communication[s] and to use Candidates' names as frequently, and as prominently (referencing characteristics such as size, typeface, and location that the candidates' name is placed) as they choose." 1994 Rule, 59 Fed.Reg. at 17, 268–69. Even more, in a 1995 advisory opinion, the Commission expanded the regulation's wide breadth by explaining that even a "committee's online activities" are considered one of the many "projects that fall within the scope of section 102.14," and thus can express a candidate's name. FEC Advisory Op.1995–09 (NewtWatch PAC), 1995 WL 247474, at *5 (Apr. 21, 1995) ("NewtWatch Advisory Op.").

Put simply, the Commission explained that although a PAC titled "NewtWatch" could not be used as part of the PAC's official title—given the usage of then-House Speaker Newt Gingrich's name— "the Act and Commission regulations *do not prohibit the Committee from using the name 'NewtWatch' as a project name.*" Thus, the PAC was allowed to use the term "NewtWatch," in *any* of their special projects and communications, in light of its "clear and unambiguous opposition to the candidate," *See id.* Specifically, this meant that § 30102(e)(4)'s codified regulation, § 102.14(b)(3), permitted the Committee to use in the term "NewtWatch," containing a candidate's name, in the PAC's uniform resource locator ("URL") for its website, simply because "online activities are projects that fall within the scope of section 102.14." NewtWatch Advisory Op at *1, 5; *see also* FEC Advisory Op.2015–04 (Collective Actions PAC), 2015 WL 4480266, at *1,3 (July 16, 2015) ("CAP Advisory Op.") (noting that the Name Prohibition "only applies to the *titles* of [a] Committee's projects. [A] Committee is free to promote Senator Sanders (or any other candidate) by name in the body of *any* website or other communication."). These cases demonstrate that, by allowing only candidates to place their names in their authorized PAC titles, Plaintiffs' speech was not restricted at all, and certainly not on the basis of the content. Thus again, this Court finds that, based on the current facts, Plaintiffs have failed to prove they are likely to succeed on the merits.

### c) Section 30102(e)(4) is a Disclosure Requirement and as Such, Only Requires "Exacting" Scrutiny.

██ The name identification requirement is an integral part of FECA's *disclosure regime*. Section 30102(e)(4) "require[s] political bodies to *disclose* the identity of persons associated with them." *See Common Cause,* 842 F.2d at 442 (emphasis added). Most notably, the Supreme Court has already found that disclosure requirements, *i.e.,* those laws that make up a disclosure regime—as § 30102(e)(4) does, is "the less-restrictive alternative to more comprehensive speech regulations" because the disclosure requirement simply requires additional speech for clarity and information's sake, rather than restricting it all together. *See Citizens United,* 558 U.S. at 316, 130 S.Ct. 876.

This means, the requirement does not prohibit speech, but simply requires political committees to disclose their "candidate authorization status ...*in a particular place,* just as do other disclosure and disclaimer regulations concerning publicly disseminated political committee communications." *See id.* Looking at § 30102(e)(4) specifically, the D.C. Circuit noted that § 30102(e)(4) "require[s] political bodies to *disclose* the identity of persons associated with them." *Common Cause,* 842 F.2d at 442 (emphasis added); *Galliano v. U.S. Postal Serv.,* 836 F.2d 1362, 1367–68 (D.C.Cir.1988) (characterizing § 30102(e)(4) as part of the Act's "specific disclosure requirements" or "extensive disclosure requirements"). More telling, this rhetoric was reiterated by a D.C. district court this very year, in *Pursuing America's Greatness v. FEC,* when it stated that § 30102(e)(4) is *"part and parcel of FECA's disclosure regime." See* 2015 WL 5675428, at *3, *11–12 (D.D.C. Sept. 24, 2015) (emphasis added).

As part of the disclosure regime, § 30102(e)(4) requires "exacting" or intermediate scrutiny. *Citizens United,* 558 U.S. at 366–67, 130 S.Ct. 876. Therefore, the statute's restrictions on expression must be substantially related to important government interests. *Id.* (quoting *Buckley v. Valeo,* 424 U.S. 1, 64, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) *(per curiam* )); *McConnell v. FEC,* 540 U.S. 93, 103–04, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003). The Supreme Court has already held that disclosure requirements, like § 30102(e)(4), "are in part justified based on a governmental interest in *provid[ing] the electorate with information about the sources of election-related spending." McCutcheon v. FEC,* —— U.S. ——, 134 S.Ct. 1434, 1459, 188 L.Ed.2d 468 (2014) (internal quotation marks omitted) (emphasis added). Continuing, the *McCutcheon* Court stated, "[w]ith modern technology, *disclo-*

*sure now offers a particularly effective means of arming the voting public with information,"* demonstrating the important governmental interest that comes from ensuring the public is armed with information about which PACs they are encountering, and can then make fully informed decisions about their contributions and support. *Id.* at 1445–46, 1460 (explaining that although government's anti-corruption interest needed to be only "sufficiently important" to satisfy the closely drawn scrutiny that applies to contribution limits, the Court had itself already stated that that "interest may properly be labeled 'compelling' "). Additionally, in *Burson v. Freeman,* the Supreme Court explicitly "concluded that a State has a *compelling interest in protecting voters from confusion and undue influence."* 504 U.S. 191, 199, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992); *see also Anderson v. Celebrezze,* 460 U.S. 780, 796, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983).

 In *Buckley,* the Court explained that disclosure could be justified with a valid governmental interest of providing "the electorate with information" about election-related spending sources). *Citizens United, 558 U.S. at 366–67, 130 S.Ct. 876; see also Buckley,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659. This was further reinforced by the Fourth Circuit in *Real Truth About Abortion, Inc. v. FEC ("RTAA")* 681 F.3d 544, 549, 553 (4th Cir.2012) (collecting cases), *cert. denied,* —— U.S. ——, 133 S.Ct. 841, 184 L.Ed.2d 705 (2013); *see also Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626, 650–51, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (noting that "disclosure requirements trench much more narrowly on [one's] interests than do flat prohibitions on speech"). In *RTAA,* the Fourth Circuit categorized the Supreme Court's

"routine[ ]" recognition that disclosure requirements as "the least restrictive means of curbing the evils of campaign ignorance and corruption that Congress found to exist" and are constitutionally permissible for a wide variety of speech. *Id.* That is precisely the purpose and application of § 30102(e)(4) here.

Here, as the FEC adequately points out, § 30102(e)(4)'s purpose is clear: to advance the governmental interest of ensuring the public voters are informed and understand which PAC they are encountering, and what that means for them going forward. *See supra,* section a. By doing so, the statute and its regulation are tailored to the governmental interest of limiting confusion, fraud, and abuse of the political process. *Id.* In fact, if all parties are compliant with the statute, § 30102(e)(4)'s requirements enables a contributor to learn "by a glance" whether a particular political committee "is an authorized or unauthorized vehicle of the candidate." *Common Cause,* 842 F.2d at 442. The name identification requirement "avoids the kind of confusing disclaimer previously possible, 'Paid for by Reagan for President. Not authorized by President Reagan,' and makes § [30120(a)'s] disclaimers more effective." *Id.* at 442; *cf. Citizens United v. FEC,* 558 U.S. 310, 368, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (explaining that other disclaimer and disclosure provisions in FECA similarly serve to " 'insure that the voters are fully informed' about the person or group who is speaking" about a candidate and "avoid confusion by making clear that the ads are not funded by a candidate" (quoting *Buckley,* 424 U.S. at 76, 96 S.Ct. 612.).

In sum, the government's interest in protecting the public, by providing it with information that will safeguard it from PACs that are confusing, misleading, and even possibly fraudulent, is undeniably an important government interest. *See supra, pp. 11–12.* Further, the fact that the government's interest only impedes on Plaintiffs' ability to include a candidate's name in its *title* alone, further demonstrates that § 30102(e)(4) is the least restrictive means of accomplishing the government's interest for transparency in PACs. *See RTAA,* 681 F.3d at 549. As the FEC adequately explained, "[w]ithout both the positive requirement of including candidate names in authorized committee names, and the corresponding restriction for unauthorized committees, a candidate's authorized committee could be lost in a sea of other groups including the candidate's name. The rules mandate a floor level of disclosure about the relationship, or lack thereof, between the speaker and any candidate mentioned by the speaker in order to "limit 'the potential for confusion.' " *See* Doc. 25, Def's Opp. to Plts. Mtn. at 11 (citing CAP Advisory Op., 2015 WL 4480266, at *2). Because § 30102(e)(4)'s restrictions are substantially related to important government interests, Plaintiffs have again, failed to demonstrate that they are likely to succeed on the merits of their claims. Given this, along with the Court's conclusion that § 30102(e)(4) is well settled law and not content based restriction, Plaintiffs are unable to satisfy the first prong required for this Court to issue a preliminary injunction.

In light of this, the Court need not further evaluate the remaining three prongs Plaintiffs must satisfy for a preliminary injunction. However, the Court briefly notes that, given the remarkable breadth of § 30102(e)(4) and Plaintiffs position as unambiguously opposing Hillary Clinton, § 30102(e)(4) affords Plaintiffs the unique ability to retain the their official website, Facebook, and Twitter page. Armed with this knowledge, Plaintiffs still have not demonstrated how they are substantially burdened in spite of 102.14(b)(3)'s allowances. Other than a re-

iteration that Plaintiff Stop Hillary PAC's name is essential to conveying the goals of the PAC, Plaintiffs have given no credibility to their argument that, having the ability to state "Stop Hillary" on their website, email address, Facebook page, and Twitter—as they currently do—without being able to use "Stop Hillary" as their official title, places a substantial burden on Plaintiffs. *See* § 102.14(b)(3); *see also* Doc. 3–1 at 8–10. More precisely, the Court notes Plaintiffs, if the FEC enforces § 30102(e)(4) will only be required to change the title of their PAC. In light of this, the Court is not convinced that Plaintiffs will suffer irreparable harm if the preliminary injunction is not granted, prong two, nor is the Court convinced that the balance of hardships tips in Plaintiffs favor, prong three. Finally, as this Court notes that the election is rapidly approaching, it holds that it is not in the public's interest to upend a statute that was created for the very purpose of ensuring the public are clearly informed. Thus this Court DENIES Plaintiffs STOP Hillary PAC and Dan Backer's Motion for Preliminary Injunction (Doc. 3). Therefore, it is hereby,

**ORDERED** that Plaintiffs STOP Hillary PAC and Dan Backer's Motion for Preliminary Injunction (Doc. 3) is **DE-NIED.**