# SUPREME COURT OF THE UNITED STATES

HELEN PURCELL, MARICOPA COUNTY RECORDER,
ET AL.

06A375 (06–532)          *v.*

MARIA M. GONZALEZ ET AL.

ARIZONA ET AL.

06A379 (06–533)          *v.*

MARIA M. GONZALEZ ET AL.

ON APPLICATIONS FOR STAY

Nos. 06A375 (06–532) and 06A379 (06–533).   Decided October 20, 2006

PER CURIAM.

The State of Arizona and county officials from four of its counties seek relief from an interlocutory injunction entered by a two-judge motions panel of the Court of Appeals for the Ninth Circuit. JUSTICE KENNEDY has referred the applicants' filings to the Court. We construe the filings of the State and the county officials as petitions for certiorari; we grant the petitions; and we vacate the order of the Court of Appeals.

I

In 2004, Arizona voters approved Proposition 200. The measure sought to combat voter fraud by requiring voters to present proof of citizenship when they register to vote and to present identification when they vote on election day.

The election procedures implemented to effect Proposition 200 do not necessarily result in the turning away of qualified, registered voters by election officials for lack of proper identification. A voter who arrives at the polls on election day without identification may cast a conditional provisional ballot. For that ballot to be counted, the voter

is allowed five business days to return to a designated site and present proper identification. In addition any voter who knows he or she cannot secure identification within five business days of the election has the option to vote before election day during the early voting period. The State has determined that, because there is adequate time during the early voting period to compare the voters' signatures on the ballot with their signatures on the registration rolls, voters need not present identification if voting early.

Arizona is a covered jurisdiction under §5 of the Voting Rights Act of 1965. So it was required to preclear any new voting "standard, practice, or procedure" with either the United States Attorney General or the District Court for the District of Columbia to ensure its new voting policy did "not have the purpose [or] effect of denying or abridging the right to vote on account of race or color," 42 U. S. C. §1973c. See *Georgia* v. *Ashcroft*, 539 U. S. 461, 461–462 (2003). On May 6, 2005, the United States Attorney General precleared the procedures Arizona adopted under Proposition 200.

In the District Court the plaintiffs in this action are residents of Arizona; Indian tribes; and various community organizations. In May 2006, these plaintiffs brought suit challenging Proposition 200's identification requirements. On September 11, 2006, the District Court denied their request for a preliminary injunction, but it did not at that time issue findings of fact or conclusions of law. These findings were important because resolution of legal questions in the Court of Appeals required evaluation of underlying factual issues.

The plaintiffs appealed the denial, and the Clerk of the Court of Appeals set a briefing schedule that concluded on November 21, two weeks after the upcoming November 7 election. The plaintiffs then requested an injunction pending appeal from the Court of Appeals. Pursuant to

the Court of Appeals' rules, the request for an injunction
was assigned to a two-judge motions/screening panel. See
Rule 3–3 (CA9 2002). On October 5, after receiving
lengthy written responses from the State and the county
officials but without oral argument, the panel issued a
four-sentence order enjoining Arizona from enforcing
Proposition 200's provisions pending disposition, after full
briefing, of the appeals of the denial of a preliminary
injunction. The Court of Appeals offered no explanation or
justification for its order. Four days later, the court de-
nied a motion for reconsideration. The order denying the
motion likewise gave no rationale for the court's decision.

Despite the time-sensitive nature of the proceedings and
the pendency of a request for emergency relief in the Court
of Appeals, the District Court did not issue its findings of
fact and conclusions of law until October 12. It then con-
cluded that "plaintiffs have shown a possibility of success
on the merits of some of their arguments but the Court
cannot say that at this stage they have shown a strong
likelihood." Order in NO. CV 06–1268–PHX–ROS etc.
(D. Ariz., Oct. 11, 2006), pp. 7–8, App. to Application for
Stay of Injunction, Tab 5 (internal quotation marks and
alterations omitted). The District Court then found the
balance of the harms and the public interest counseled in
favor of denying the injunction.

## II

"A State indisputably has a compelling interest in pre-
serving the integrity of its election process." *Eu* v. *San
Francisco County Democratic Central Comm.*, 489 U. S.
214, 231 (1989). Confidence in the integrity of our elec-
toral processes is essential to the functioning of our par-
ticipatory democracy. Voter fraud drives honest citizens
out of the democratic process and breeds distrust of our
government. Voters who fear their legitimate votes will be
outweighed by fraudulent ones will feel disenfranchised.

"[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds* v. *Sims*, 377 U. S. 533, 555 (1964). Countering the State's compelling interest in preventing voter fraud is the plaintiffs' strong interest in exercising the "fundamental political right" to vote. *Dunn* v. *Blumstein*, 405 U. S. 330, 336 (1972) (internal quotation marks omitted). Although the likely effects of Proposition 200 are much debated, the possibility that qualified voters might be turned away from the polls would caution any district judge to give careful consideration to the plaintiffs' challenges.

Faced with an application to enjoin operation of voter identification procedures just weeks before an election, the Court of Appeals was required to weigh, in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and its own institutional procedures. Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase. So the Court of Appeals may have deemed this consideration to be grounds for prompt action. Furthermore, it might have given some weight to the possibility that the nonprevailing parties would want to seek en banc review. In the Ninth Circuit that procedure, involving voting by all active judges and an en banc hearing by a court of 15, can consume further valuable time. These considerations, however, cannot be controlling here. It was still necessary, as a procedural matter, for the Court of Appeals to give deference to the discretion of the District Court. We find no indication that it did so, and we conclude this was error.

Although at the time the Court of Appeals issued its order the District Court had not yet made factual findings

to which the Court of Appeals owed deference, see Fed. Rule Civ. Proc. 52(a), by failing to provide any factual findings or indeed any reasoning of its own the Court of Appeals left this Court in the position of evaluating the Court of Appeals' bare order in light of the District Court's ultimate findings. There has been no explanation given by the Court of Appeals showing the ruling and findings of the District Court to be incorrect. In view of the impending election, the necessity for clear guidance to the State of Arizona, and our conclusion regarding the Court of Appeals' issuance of the order we vacate the order of the Court of Appeals.

We underscore that we express no opinion here on the correct disposition, after full briefing and argument, of the appeals from the District Court's September 11 order or on the ultimate resolution of these cases. As we have noted, the facts in these cases are hotly contested, and "[n]o bright line separates permissible election-related regulation from unconstitutional infringements." *Timmons* v. *Twin Cities Area New Party*, 520 U. S. 351, 359 (1997). Given the imminence of the election and the inadequate time to resolve the factual disputes, our action today shall of necessity allow the election to proceed without an injunction suspending the voter identification rules.

The order of the Court of Appeals is vacated, and the cases are remanded for further proceedings consistent with this opinion. Pursuant to this Court's Rule 45.3, the Clerk is directed to issue the judgment in these cases forthwith.

*It is so ordered.*

JUSTICE STEVENS, concurring.

Allowing the election to proceed without enjoining the statutory provisions at issue will provide the courts with a better record on which to judge their constitutionality. At least two important factual issues remain largely unre-

solved: the scope of the disenfranchisement that the novel identification requirements will produce, and the prevalence and character of the fraudulent practices that allegedly justify those requirements. Given the importance of the constitutional issues, the Court wisely takes action that will enhance the likelihood that they will be resolved correctly on the basis of historical facts rather than speculation.