McKEAGUE, Circuit Judge,
concurring.
I concur in Judge Gibbons’ opinion in its entirety, but write separately to emphasize one point. The notion that plaintiff organizations could obtain emergency injunctive relief from a federal court, relief which has the effect of disrupting an ongoing election process in frustration of the duly enacted will of the people of a sovereign state, based on allegations admittedly unsupported by evidence that any of the organizations’ members has been injured or is threatened with imminent injury, represents a disturbing expansion of associational standing principles.
Counsel for plaintiffs admitted at the hearing on the motion for TRO that plaintiffs could not identify a single member of either plaintiff organization that was affected by the alleged deficiencies in the Voter ID law asserted in support of the motion for TRO. TRO hrg. tr. pp. 39-40. Standing, counsel argued, and the district court held, was premised on the teaching of Sandusky Democratic Party v. Blackwell, 387 F.3d 565, 573-74 (6th Cir.2004).
Sandusky stands for the proposition that political parties and labor organizations have standing to assert the rights of *1013 their members where injury to members, albeit unidentified, was shown to be not speculative or remote, but “real,” “imminent” and “inevitable.” This showing has not been made in the present record. In the wake of Directive 2006-78, issued by the Secretary on Thursday, October 26, 2006, the possibility that any member of plaintiff organizations has suffered or will imminently suffer injury is, as evidenced by the district court’s colloquy with counsel during the hearing on the motion for TRO, purely speculative. The mere possibility of garden variety irregularities does not portend the sort of fundamental unfairness resulting in significant disenfranchisement that would warrant judicial intervention. See Purcell v. Gonzalez, 127 S.Ct. 7-8, 2006 WL 2988365, at *2 (2006) (recognizing a state’s “compelling interest in preserving the integrity of its election process”).
Granted, plaintiffs may yet be able to further develop the record in the district court hearing on the motion for preliminary injunction set for Wednesday, November 1, 2006. They would be well advised to do so, for it is their burden to establish standing.
In this vein, one further cautionary note is in order. Insofar as plaintiffs’ standing implicitly rests on assertion of the interests of nonmembers for whose interests plaintiff Northeast Ohio Coalition for the Homeless advocates, e.g., homeless persons, plaintiffs are operating outside the bounds of traditional associational standing. They rely on a form of representational or third-party standing for which they have cited no controlling or even persuasive precedent. See Kowalski v. Tesmer, 543 U.S. 125, 129-30, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (observing that a party generally cannot rest its claim on legal rights of third parties and that exceptions to this rule have not been looked upon favorably). If plaintiffs mean to rely on the interests of nonmembers to make their case for injunctive relief, they should be prepared to identify legal authority for such an innovation in the established principles of associational or representational standing.