**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILDWEST INSTITUTE; FRIENDS OF THE BITTERROOT, INC., <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> DAVE BULL; ABIGAIL KIMBELL; UNITED STATES FOREST SERVICE, <br><br> Defendants - Appellees, <br><br> BITTER ROOT RESOURCE CONSERVATION AND DEVELOPMENT AREA, INC.; RAVALLI COUNTY; SULA VOLUNTEER FIRE DEPARTMENT; ROBERT WETZTSEON; BECKI LINDERMAN; ROCKY MOUNTAIN LOG HOMES, <br><br> Defendants-Intervenors - Appellees. | No. 06-35662 <br><br> D.C. No. CV-06-00066-DWM <br><br> OPINION |

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted November 15, 2006
Portland, Oregon

Filed November 29, 2006

Before: GOODWIN, O'SCANNLAIN, and FISHER, Circuit Judges.

Opinion by Judge O'Scannlain

O'SCANNLAIN, Circuit Judge

In this interlocutory appeal, we must decide whether the district court abused its discretion in denying a preliminary injunction against the United States Forest Service's implementation of the Middle East Fork Hazardous Fuel Reduction Project in the Bitterroot National Forest in Montana.

I

The Middle East Fork Hazardous Fuel Reduction Project ("MEF Project") was developed under the authority of the Healthy Forests Restoration Act ("HFRA"), 16 U.S.C. § 6501 *et seq.*, which directs the Forest Service ("Service") to implement fuel reduction projects "as soon as practicable" on federal land at risk from an insect epidemic. After a long process, the Service adopted "Alternative-2 Modified," which calls for the treatment of 4938 acres of land in the Bitterroot National Forest, as the plan for the MEF Project. The stated purposes for the action are (1) to reduce wildland fire threats to the Middle East Fork community, (2) to restore fire-adapted ecosystems in the Middle East Fork

landscape, and (3) to restore stands affected by the Douglas-fir bark beetle epidemic by treating infested areas and lands at risk.

A coalition of interested groups comprised of WildWest Institute and the Friends of the Bitterroot (collectively "WildWest") filed a complaint for declaratory and injunctive relief against implementation of the MEF Project in the district court for the District of Montana on April 26, 2006. A hearing on a motion for a preliminary injunction was held on June 30, 2006, before Chief Judge Molloy who promptly issued an Order which considered the probability of success on the merits of each of plaintiffs' claims, as well as the possibility of irreparable injury. Although the court stated that some valid concerns about the MEF Project were raised, especially regarding the opinions of the soil scientist Ken McBride, it concluded that the likelihood of success on the merits of the claims before it was low. It also found that as to irreparable injury, the "[p]laintiffs' arguments are asserted with little citation to either scientific evidence or case law." In contrast, the court considered the risk of a severe wildfire in the next 10-15 years and its effect on the Middle East Fork community as a measurable injury. The district court therefore denied Wildwest's motion for a preliminary injunction.

Because a full trial on WildWest's claims is to resume on December 8, 2006, we have expedited consideration of this timely appeal.

II

Our review of the denial of a preliminary injunction "is limited and deferential." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). We ask only whether the district court has abused its discretion. *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 730 (9th Cir. 1999); *see also Purcell v. Gonzalez*, No. 06-532, 2006 WL 2988365 (U.S. Oct. 20, 2006). As we have explained,

> We typically will not reach the merits of a case when reviewing a preliminary injunction . . . . By this we mean we will not second guess whether the court correctly applied the law to the facts of the case, which may be largely undeveloped at the early stages of litigation. As long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to the facts of the case.

*Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1298 (9th Cir. 2003) (internal citations omitted).

III

A

WildWest first argues that the court abused its discretion in failing to give more weight to the probability of success on its claim that the Service irreversibly and irretrievably committed resources in advance of a final decision by pre-marking trees for harvesting, in violation of the National Environmental Policy

4

Act ("NEPA"). The applicable regulations provide that the Service shall not take preliminary action which would (1) have an adverse environmental impact, or (2) limit the choice of reasonable alternatives. 40 C.F.R. § 1506.1. In other words, agencies "shall not commit resources prejudicing selection of alternatives before making a final decision." 40 C.F.R. § 1502.2(f).

The record here shows that while the Service did indeed spend $208,000 before the issuance of the Record of Decision ("ROD"), such expenditure did not necessarily prejudice the final outcome. At least 410 acres of timber that were pre-marked for cutting were dropped from the final modified plan. In addition, Project Director Dave Bull explained to interested members of the public, "As I stated at my meeting . . . I am willing to meet with you during the objection process to discuss options prior to issuing my decision. There is nothing that we are doing on the ground in the East Fork than cannot be changed or deleted." Thus, although we make no determination as to WildWest's ultimate success on the merits of this claim, the record indicates that there was nothing irreversible about the Service's preparatory actions in this case. *See Friends of Southeast's Future v. Morrison*, 153 F.3d 1059, 1063 (9th Cir. 1998) (finding no irreversible commitment of resources where the government retained absolute authority to

decide whether any logging activities would take place).  We are satisfied that there was no abuse of discretion in the district court's treatment of this claim.

B

WildWest next argues that the Service engaged in a "pattern and practice of selective inclusion and exclusion" of public collaboration in choosing the plan for the MEF Project.  The district court pointed out that at least two noticed meetings were held to discuss "recommendations concerning fuel reduction, thinning, bark beetles, [and] timber harvest"  In addition, the court considered the fact that there were many informal gatherings and meetings in which the public, and specifically WildWest and Friends of the Bitterroot, were involved.  Finally, the court noted that although there was an incident when Jim Miller, President of Friends of the Bitterroot, was excluded from a press conference, his exclusion did not violate any statutory right of attendance, even if it was a mistake from a public relations perspective.

Once again, we cannot say that the district court abused its discretion.  The court made no legal errors, and its decision is adequately supported by the record.

C

WildWest next claims that the Service suppressed the concerns of its lead soil scientist, Ken McBride.  The district court considered the comments of

McBride to be of "significant concern." Nonetheless, the court acknowledged that many of McBride's recommendations were incorporated into the Final Environmental Impact Statement ("EIS") and therefore thought the probability of success on this claim was low.

The record establishes that there was controversy over whether McBride's soil sampling technique adequately measured detrimental soil disturbance.[1] However, the district court was correct in noting that the Service ultimately adopted McBride's recommendations in the Final EIS. As a result of the adoption of McBride's scientific assessments, "Alternative-2 Modified will not treat any units with 15% or greater soil disturbance or units or portions of units projected to possibly have 15% or greater detrimental disturbance after proposed treatments." Thus, on this record, we are unable to say that the district court abused its discretion in determining that the probability of success on this claim was low.

D

Finally, WildWest argues that the Service did not adequately verify concerns about the soil disturbance in certain units included within the MEF Project. Although like the district court we consider this to be a close question, we

_____

[1] The Forest Plan and the Region 1 Soil Quality Standards do not allow logging on any units that do have, or will have, above 15% detrimental soil disturbance.

7

are unable to say that the lower court abused its discretion. WildWest's main argument is that the Service's failure to verify soil conditions in roughly 700 acres of the treatment area runs afoul of our decision in *Lands Council v. Powell*, 395 F.3d 1019 (9th Cir. 2005) (as amended). The district court thought this case distinguishable from *Lands Council* because the MEF Project only treats units that were surveyed by McBride, terraced, or where first-hand knowledge of peer group members supported the evidence found in the Timber Stand Management Record System ("TSMRS") and aerial photographs.

At this stage of the proceedings, we agree with the district court's conclusion that this case is different from *Lands Council*. In that case, "[t]he Forest Service did not walk, much less test, the land in the activity area." *Id.* at 1034. As was explained at oral argument, and confirmed by the record, here the Service did not rely blindly upon the TSMRS, but put "boots on the ground" and verified its projections and estimations with on-site monitoring by peer group members. Significantly, as a result of walking the units to verify whether past management activity had taken place, the Service dropped a number of units from the plan where observations of individuals at the site indicated activity inconsistent with the Service's estimates.

This case is also distinguishable from *Ecology Center, Inc. v. Austin*, 430 F.3d 1057 (9th Cir. 2005), where the court found a violation of NEPA and the National Forest Management Act in a situation in which the Service relied upon data from areas with similar ecological characteristics to estimate soil disturbance. Although there were field reports in *Ecology Center* like the ones in this record, the court refused to credit the reports because they did not indicate whether the on-site analysis differed from the Service's estimates and "there [was] no indication in the draft EIS or final EIS that the Forest Service actually consulted and relied upon any of the field reports." *Id.* at 1071. In contrast, the field reports here expressly stated whether the on-site verification supported or contradicted the Service's estimates. It is also clear from the fact that the Service dropped a number of units that it actually relied upon the field reports and on-site analysis in developing its modified proposal.[2] Although we expect that the Service will provide additional information at trial to enable a more accurate "assess[ment of] the reliability or significance of these reports," *id.* at 1070, at this stage of the proceedings, we

---

[2] The ROD states: "[T]he interdisciplinary team determined that their site specific knowledge of 25 of the units was consistent with the lack of previous harvest activity recorded in the forest data base, and therefore supported the assessment of detrimental soil disturbance made by the soil scientist in the FEIS . . . This leaves six units of concern. Alternative 2-Modified will not treat these six units in order to obtain additional information concerning these units."

cannot say that the district court abused its discretion in not giving more weight to WildWest's probability of success on this claim.

III

The district court also weighed the possibility of irreparable harm to both parties. In so doing, the district court recognized that HFRA has altered the irreparable injury test to mandate that a reviewing court take account of the "short- and long-term effects" of both action and inaction. 16 U.S.C. § 6516(c)(3). The court further noted that the plaintiffs' arguments were "asserted with little citation to either scientific evidence or case law." In contrast, the court concluded that the possibility of a severe wildfire in the area, and the inherent danger to human life, constituted measurable injuries, as did the money the Service would lose in revenue from timber sales if the MEF Project were enjoined.

Overall, we cannot say that the district court abused its discretion in weighing the respective hardships. On appeal, WildWest puts forth little more than assertion to support its claims. For instance, although WildWest continually asserts that the MEF Project will harvest "old growth" stands, the entire record points to the contrary. In the ROD, the Service explained: "One hundred percent of the treatment units in Alternative-2 Modified have been field inventoried to assess old growth habitat. It has been verified that none of the units have old

10

growth habitat in them." As evidence of the "continuing value" of the alleged old growth habitat that will be harvested in the MEF Project, WildWest asks the court to "examin[e] representative photos from the proposed cutting units." In effect, WildWest asks the court to draw a contrary scientific conclusion from the Service based upon this photographic evidence. However, when competing scientific views are presented, "a reviewing court must generally be at its most deferential." *Balt. Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 103 (1983); *see also Marsh v. Or. Natural Res. Council, Inc.*, 490 U.S. 360, 377 (1989). In this case, where only assertion and photography are offered by WildWest as contrary scientific evidence, we are unwilling to say that the district court abused its discretion.

## IV

We reiterate that our review at this stage is limited and deferential. *Southwest Voter Registration Educ. Project*, 344 F.3d at 918; *Purcell*, 2006 WL 2988365, at *2. We make no intimation about the ultimate merits of WildWest's claims. It may be that when the record is fully developed, a different view of the MEF Project will emerge. For now, we are confident that there was no abuse of discretion in the district court's denial of a preliminary injunction against the Service's implementation of the MEF Project.

**AFFIRMED**.

## COUNSEL LISTING

Thomas J. Woodbury, Missoula, Montana, argued the cause for the plaintiff-appellants and filed a brief.

Lori L. Caramanian, U.S. Department of Justice, Environmental & Natural Resources Division, Denver, Colorado, argued the cause for the defendant-appellees. Sue Ellen Wooldridge, Assistant Attorney General, Lisa Jones, Christine Everett and Alan Campbell were on the brief.

Julie A. Weis, Haglund Kelley Horngren Jones & Wilder, Portland, Oregon, argued the cause for the defendant-intervenor-appellees. Scott W. Horngren and George H. Corn, Ravalli County Attorney, were on the brief.