COLE, Chief Judge,
dissenting.
As millions of Americans across the country prepare to vote, their counterparts in the state of Michigan will be put in the position of choosing between their freedom of expression and their right to vote. The penalty in Michigan for taking a ballot selfie is the loss of one’s right to vote. In permitting the loss of such a fundamental right, the majority puts the administrative interests of the state above the individual rights of the citizens of Michigan.
The majority misapplies the standard for granting a motion to stay. When an appellate court considers a stay pending appeal, it must consider:
(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4)' the public interest in granting the stay.
Coalition to Defend Affirmative Action v. Granholm, 473 F.3d 237, 244 (6th Cir. 2006) (internal quotation marks and citations omitted). “All four factors are not prerequisites but are interconnected considerations that must be balanced together.” Id. “The strength of the likelihood of success on the,merits that needs to be demonstrated is inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue.” Baker v. Adams Cty./Ohio Valley Sch. Bd., 310 F.3d 927, 928 (6th Cir. 2002).
In the matter at hand, the district court issued a preliminary injunction and denied the Secretary’s stay motion. A stay of the district court’s ruling is only warranted when a defendant has demonstrated “at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted.” Id. The Secretary has failed to make this showing.

I. Likelihood of Success on the Merits

Crookston will likely prevail on the merits of this appeal, because the district court correctly concluded that the Michigan laws and instructions that prevent ballot selfies violate the First Amendment of the United States Constitution. All the other courts, including the only .other circuit to have considered this issue, have found that laws banning ballot selfies are unconstitutional. See Rideout v. Gardner, No. 15-2021, 838 F.3d 65, 2016 WL 5403593 (1st Cir. Sept. 28, 2016); Indiana Civil Liberties Union Found. Inc. v. Indiana Sec’y of State, No. 1:15-CV-01356-SEB-DML, 2015 WL 12030168 (S.D. Ind. Oct. 19, 2015).
The. First Amendment prohibits the government from passing laws that abridge *403 the freedom of speech. U.S. Const, amend. I. Courts apply varying levels of scrutiny depending on whether the First Amendment restrictions at issue are content-based restrictions or content-neutral restrictions. If the restrictions are content based, “the law must survive strict scrutiny.” Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cty., Tennessee, 274 F.3d 377, 391 (6th Cir. 2001). “In contrast, regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny.” Id,.
Because Michigan’s restrictions fail even intermediate scrutiny, I need not resolve whether these restrictions are content based or content neutral. The First Circuit in evaluating similar restrictions also declined to decide whether the restrictions were content based because it found New Hampshire’s restrictions could not survive the lower threshold of intermediate scrutiny. See Rideout v. Gardner, No. 15-2021, 838 F.3d at 71, 2016 WL 5403593, at *5 (1st Cir. Sept. 28, 2016). In order for the laws and instructions at issue to withstand intermediate scrutiny, they have to be “narrowly tailored to serve a significant governmental interest, and [ ] leave open ample alternative channels for communication of the information.” Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).
The Secretary has not provided any evidence to show that the problems these laws and instructions were meant to address actually exist in Michigan today. The Secretary argues that Michigan’s restrictions address the important government interests of (1) discouraging “vote-buying and coercion by ensuring that ballot content is not exposed,” (2) ensuring “that the polling place is a sanctuary for all—not just some—voters,” and (3) preventing “the delays that may occur while the voting booth is occupied or access to the tabulator is blocked by voters taking photos or recording the voting process.” (Def.’s Emergency Mot. for Stay at 18, 20, and 22.) While all of these may be government interests ■ in the abstract, there is disproportionality between the . interests stated and the ballot selfie prohibition created by these laws and instructions. The Secretary provides no evidence to prove that any of these interests actually present a problem in Michigan at the moment. The Secretary explains this failure of evidence by stating that these long-standing restrictions have acted as prophylactic measures that have successfully prevented each of these problems from arising. {Id. at 19.) The Secretary’s argument flips the state’s burden. When a state infringes upon the freedom of speech of its citizens, it cannot simply assert a government interest in the abstract, it must show that those interests exist and are actually served by the prohibitions imposed by the state. See Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 810, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).
Even if the state had provided evidence from this century that digital photography at polls has created the problems listed above, Michigan’s laws and instructions would still be unconstitutional because they are not narrowly tailored to the government interests asserted. In order to be narrowly tailored, a regulation must “pro-motet] a substantial government interest that would be achieved less effectively absent the regulation, and does not burden substantially more speech than is necessary to further the government’s legitimate interests.” Tucker v. City of Fairfield, Ohio, 398 F.3d 457, 463 (6th Cir. 2005) (internal quotation marks and citations omitted). The tailoring requirement prevents the government from taking the “path of least resistance”' and sacrificing “speech for efficiency.” McCullen v. Coakley, — U.S. -, 134 S.Ct. 2518, 2534, *404 189 L.Ed.2d 502 (2014). The First Circuit’s analysis of New Hampshire’s similar laws provides helpful guidance on the issue of tailoring. The First Circuit found that New Hampshire had not narrowly tailored its laws because “the prohibition on ballot sel-fíes reaches and curtails the speech rights of all voters, not just those motivated to cast a particular vote for illegal reasons,” and New Hampshire “has not demonstrated that other state and federal laws prohibiting vote corruption are not already adequate to the justifications it has identified.” Rideout v. Gardner, No. 15-2021, 888 F.3d at 74, 2016 WL 5403593, at *7 (1st Cir. Sept. 28, 2016) (citing federal statutes that prohibit vote buying, voter coercion, and voter intimidation). The First Circuit’s rationale holds as strongly for Michigan’s prohibitions as it does for New Hampshire’s.
The majority says that the Supreme Court’s decision in Burson v. Freeman, 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) dampens Crookston’s likelihood of success on the merits. As the First Circuit already pointed out, Burson is distinguishable from this case because “[t]he intrusion on the voters’ First Amendment rights is much greater here than that involved in Burson.” Id. at 17. The government’s responsibility to narrowly tailor its restrictions is even more critical where there is a greater burden. Michigan’s laws and instructions banning ballot selfies substantially burden more speech than is necessary to further the government’s stated interests. As such, the laws and rules are not narrowly tailored and are therefore unconstitutional.

II. The Likelihood that the Moving PaHy will be Irreparably Harmed Absent a Stay

The majority, in granting the stay, relies on the proximity to the election and the Secretary’s argument that Michigan would be unable to convey the change to their poll workers prior to the election. While these are legitimate concerns, relying on them without balancing the constitutional burdens faced, by the plaintiff and other similarly situated voters fails to properly balance the factors for a stay.
While the election is fast approaching, the administrative changes required by the preliminary injunction are not so onerous that they rise to the level of irreparable harm. “Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough” to reach the level of irreparable harm. Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). The Secretary, in her motion, argues that a change in the law, at this time, will create “chaos” on election day. (Def.’s Emergency Mot. for Stay, 30.) The Secretary, however, is only required to convey to election officials that they will not be voiding ballots when voters take ballot sel-fies. It does not require a new set of procedures; rather it only requires communication to the various polling officers and polling sites. This may not be as simple as an email, as the Secretary has noted, but does not rise to the level of irreparable harm. It requires some additional expenditure of time and resources but, as the Supreme Court has stated, that is not enough to meet the standard for irreparable harm.
Further, this is not an issue akin to reprinting ballots, where there is a chance that there will not be enough time before the election to inform poll workers of the change in law. As of the date of this order, there are still ten days left before election day, plenty of time to convey this change to poll workers.
The Supreme Court’s per curiam decision in Purcell v. Gonzalez, 549 U.S. 1, 127 *405 S.Ct. 5, 166 L.Ed.2d 1 (2006), is easily distinguishable because the district court in Purcell failed to provide timely findings of fact to the court of appeals. That is not the case here. The district court, after reviewing affidavits and other factual exhibits provided by the parties, here included findings of fact in its October 24, 2016 Opinion. These factual findings are naturally limited as they were issued on a motion for preliminary injunction rather than after a full merits hearing but address the main concern articulated in Purcell. Consequently, the majority’s reliance on Purcell does not demonstrate the irreparable harm needed under the applicable factors.

III. The Prospect that Others will be Harmed if the Court Grants the Stay

The repercussion of taking a ballot selfie in Michigan is the loss of one’s right to vote. Consequently, this likely unconstitutional law will deprive many of the citizens of Michigan of their right to vote in this election if they exercise their First Amendment right to take a ballot selfie. This is one the highest levels of harm that could result from a law. It is, quite simply, the loss of a fundamental right.

IV. The Public Interest in Granting the Stay

As the district court accurately points out, there can be no public interest in allowing Michigan to violate the constitutional rights of its citizens. (District Ct. Order, R. 25, PageID 315.) The public, however, does have an interest in the “protection of First Amendment liberties.” Dayton Area Visually Impaired Persons, Inc. v. Fisher, 70 F.3d 1474, 1490 (6th Cir. 1995).

Conclusion

The Secretary has failed to make a meritorious argument for a stay. A contrary finding, as the majority finds here, results from a weighing of the administrative costs to the state over the constitutional rights of individual Americans. This improper weighing of the motion to stay factors has the real world effect of allowing an unconstitutional law to remain in effect while depriving Michigan citizens of their right to vote. Accordingly, I respectfully dissent from the grant of the Secretary’s motion.