O’SCANNLAIN, Circuit Judge,
with whom TALLMAN, CALLAHAN, BEA, and IKUTA, Circuit Judges, join,
dissenting from the grant of rehearing en banc:
We have made a serious mistake by granting rehearing en banc. Our court risks present chaos and future confusion in pursuit of an outcome the Supreme- Court has explicitly told us to avoid. There are no good reasons—and many bad ones—to take this case en banc six days before the election on such a compressed schedule. Sadly, a majority of this court has ignored such dangers in its unseemly rush to overrule, by any means necessary, a five-day old opinion. One hopes cooler heads prevail and this case receives the attention it deserves—but I fear instead a shoot-first, ask questions later approach that will haunt us for years to come.
I
A brief background: On September 23, 2016, the district court denied plaintiffs’ motion for a preliminary injunction blocking Arizona from implementing certain provisions in Arizona House Bill 2023. These provisions restrict the collection of voters’ early ballots to family members, household members, certain government officials, and caregivers. Plaintiffs appealed. A Ninth Circuit motions panel unanimously denied plaintiffs’ emergency motion for an injunction pending' appeal on October 11th. On October 14th that same panel süa sponte amended its October 11th ruling to expedite the appeal. In fourteen days a merits panel received briefing, heard oral argument, and issued an opinion affirming the district court and denying the request for a preliminary injunction by a two to one majority. The case was called en banc the same day the opinion was issued (October 28th). Eschewing our normal en banc schedule, memo exchange and voting took place over five days.
Why the rush?
II
A
The closer we are to election day the more a preliminary injunction is disfavored. See, e.g., Lair v. Bullock, 697 F.3d 1200, 1214 (9th Cir. 2012) (staying, a dis *795 trict court’s injunction “given the imminent nature of the election”).[1] Early voting began in Arizona on October 12th. Upsetting the applecart 90% of the way through voting by issuing an injunction a couple of days before November 8th would fly in the face of Supreme Court guidance counseling against this exact type of last-minute interference. Purcell v. Gonzalez, 549 U.S. 1, 4-6, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006) (vacating a Ninth Circuit injunction against the State of Arizona because of “the imminence of the election and the inadequate time to resolve the factual disputes”).[2] We should follow other circuits and respect Purcell. See, e.g., Crookston v. Johnson, No. 16-2490, 841 F.3d 396, 2016 WL 6311623 (6th Cir. Oct. 28, 2016) (“Call it what you will—laches, the Purcell principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason.... ”).
B
A second serious problem is that we risk creating a mess of current law by trying to produce a ruling under self-imposed time pressure. The en banc court could render a decision in the next five days in hopes of enjoining Arizona’s law before electiop day and then deal with the consequences of its decision later. Or, it could take whatever time it deems necessary to gain a thorough mastery of the record, to hear oral argument from the parties, and to write a considered opinion in plenty of time for the next election. This case has an extensive record and could potentially set an important precedent.
“Allowing the election to proceed without enjoining the statutory provisions at issue will provide the courts with a better record on which to judge their constitutionality. ... Given the importance of the constitutional issues, the Court wisely takes action that will enhance the likelihood that they will be resolved correctly on the basis of historical facts rather than speculation.” Purcell, 549 U.S. at 6, 127 S.Ct. 5 (J. Stevens, concurring). .
We should heed Justice Stevens’s advice.
*796 III
I respectfully dissent from the ill-advised order granting rehearing en banc under these contrived conditions.

. Other circuits have repeatedly recognized that this kind of meddling right before an election is almost never appropriate. Veasey v. Perry, 769 F.3d 890, 895 (5th Cir. 2014) (staying an injunction "in light of the importance of maintaining the status quo on the eve of an election”); Colon-Marrero v. Conty-Perez, 703 F.3d 134, 139 n.9 (1st Cir. 2012) (noting that "even where plaintiff has demonstrated a likelihood of success, issuing an injunction on the eve of an election is an extraordinary remedy with risks of its own”); Serv. Emps. Int’l Union Local 1 v. Husted, 698 F.3d 341, 345 (6th Cir. 2012) ("As a general rule, last-minute injunctions changing election procedures are strongly disfavored.”).

. The majority may argue that the importance of ensuring everyone has the right to vote trumps any concern about jumping the gun or improperly interfering in an election. But, Purcell addressed this exact question, and the Supreme Court decided 9-0 against the position the majority espouses. Indeed, the law at issue in that case, identification requirements, affected far more people and potentially took away their right to vote entirely, whereas this law affects fewer voters and only restricts one aspect of one way of early voting. Id. at 2-3, 127 S.Ct. 5; see also Crawford v. Marion County Election Bd., 553 U.S. 181, 187-88, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008) (discussing potential reach of ID law). We cannot overturn Supreme Court precedent, even if some judges wish it wére otherwise. See, e.g., Richter v. Hickman, 578 F.3d 944 (9th Cir. 2009), rev’d, Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) ("[Jjudicial disregard [for sound and established principles] is inherent in the opinion of the Court of Appeals for the Ninth Circuit here under review.”).