KELLY, Circuit Judge, dissenting.[4]
On several issues, I agree with the court's opinion. I agree that plaintiffs have standing regardless of whether they currently "possess[ ] an acceptable form of ... identification," because the statute's requirement that they "produce ... identification to cast an in-person ballot" constitutes an injury-in-fact. Common Cause, 554 F.3d at 1351. I also agree that the "courthouse doors remain open" to provide additional relief should other individuals who lack the necessary identification come forward before the November election.
But I would deny the motion to stay because (1) the Secretary has not made the requisite strong showing that he is likely to succeed on the merits, (2) the *562 Secretary is unlikely to suffer irreparable injury absent a stay, (3) plaintiffs and other interested parties are likely to suffer substantial injury under a stay, and (4) the public interest favors continued injunctive relief. See Hilton, 481 U.S. at 776, 107 S.Ct. 2113. For these reasons, I respectfully dissent from the grant of a stay.
"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [our] discretion." Nken v. Holder, 556 U.S. 418, 433-34, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). The first and most important requirement is that a stay applicant make a "strong showing that he is likely to succeed on the merits." Brady, 640 F.3d at 789 (quoting Hilton, 481 U.S. at 776, 107 S.Ct. 2113 ). For several reasons, the Secretary has not overcome this hurdle.
First, as the court correctly notes, the issue is not that North Dakota law requires voters to maintain a current residential street address, it is that voters must obtain and maintain certain forms of identification reflecting that address. The district court found that all state-issued identification cards in North Dakota require payment of a fee. The Secretary has countered that state law requires the Department of Transportation to provide free non-driver's identification cards, but the evidence before the district court demonstrated that this was not North Dakota's actual practice. At least one plaintiff testified that she was charged a fee to obtain one of these cards in spite of the statute. The district court also found that the Department of Transportation's website stated that a fee is required to obtain the card. These factual findings are not clearly erroneous.[5]
In addition to incurring a cost, an eligible voter must also present certain documentation to obtain an identification card from the state. The governing statute allows the Department of Transportation to require "proof of residence address." N.D. Cent. Code § 39-06-03.1(3). Currently, the Department's website states, "All applicants must present proof of current name, date of birth, and legal presence in the United States." N.D. Dep't of Transp., Identification Requirements, https://www.dot.nd.gov/divisions/driverslicense/docs/proof-of-identification-documents.pdf (last visited Sept. 21, 2018). They must also provide their social security number, which they may be required to prove by presenting official documentation. Finally, "[p]roof of North Dakota residence address ... may be required by presenting" at least one of the following documents, which "must contain [the applicant's] name and current physical residence address": (1) a government-issued property tax form; (2) a mortgage, lease, or rental document; (3) a homeowner's or renter's insurance policy; (4) a utility bill; (5) a non-cellular phone bill; or (6) a parent's proof of address for a *563 minor child.[6] Id. at 3. Unless the individual is a minor (in which case voting is not an issue), each of these documents requires the individual to maintain some type of an interest in physical, residential property.
These facts, standing alone, would demonstrate that North Dakota has erected unconstitutional barriers for prospective voters. See Harper v. Va. State Bd. of Elections, 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) ("[W]ealth or fee paying has, in our view, no relation to voting qualifications; the right to vote is too precious, too fundamental to be so burdened or conditioned."). But the district court made several other factual findings demonstrating that the burdens on certain groups of voters, especially Native Americans and the homeless, are excessive. The court does not dispute that the district court concluded (based on unrebutted evidence) that at least 69,616 eligible voters-including 4,998 Native Americans-currently lack the identification required to vote. That group comprises nearly twenty percent of the total number of individuals who vote in a regular quadrennial election in North Dakota. See N.D. Sec'y of State, 2010-2018 Election Results, https://vip.sos.nd.gov/PortalListDetails.aspx?ptlhPKID=62&ptlPKID=4 (last visited Sept. 21, 2018) (showing 349,945 ballots cast in 2016 general election). And the district court further found that roughly half of eligible Native American voters lack proper supplemental documentation, such that "at least 2,305 Native Americans will not be able to vote in 2018 under the new law." Although some portion of those Native American voters may be able to obtain proper identification under the aspects of the district court's injunction not covered by the stay, it is likely that many eligible voters will still be disenfranchised.
That the election provision at issue burdens only some voters does not preclude relief. If the district court's injunction was indeed overbroad, the appropriate response would be to narrow it to cover only individuals who lack a valid form of identification reflecting a current residential street address. And the relief that plaintiffs originally requested was not as broad as what the district court provided. Plaintiffs asked the court to reinstate the "affidavit option" to allow individuals who could not show a valid form of identification to vote by executing an affidavit swearing to the individual's qualifications as a voter. As I understand it, the affidavit option under the first injunction would not be available to all voters, but only those who cannot produce one of the forms of identification required by the statute-that is, only those whose right to vote would be unconstitutionally burdened by the statute. These are exactly the sort of "as applied" remedies contemplated by Crawford. See 553 U.S. at 199-203, 128 S.Ct. 1610 (opinion of Stevens, J.); see also Frank, 819 F.3d at 386-87 ("Plaintiffs now accept the propriety of requiring photo ID from persons who already have or can get it with reasonable effort, while endeavoring to protect the voting rights of those who encounter high hurdles. This is compatible with our opinion and mandate, just as it is compatible with Crawford .").[7]
*564 The remaining stay factors do not favor the Secretary. The only irreparable injury North Dakota could face is the possibility that voters might cast a ballot in the wrong precinct under the district court's injunction. There is no evidence in the record properly before us that this outcome is likely. Cf. Brady, 640 F.3d at 789 ("The movant must show that it will suffer irreparable injury unless a stay is granted."). Furthermore, nothing in the district court's injunction requires a voter to vote in the precinct attached to his current mailing address. The injunction does not change the definition of "residence" used to determine the voter's precinct, see N.D. Cent. Code § 16.1-01-04.2(1) ; it modifies only the requirements of the voter's identification. Nothing in the injunction prevents an election official from accepting a North Dakota identification bearing a mailing address from a different precinct, and verifying that the voter is in the correct precinct by other reliable means-perhaps by using a map or an affidavit to confirm his "residence." See N.D. Cent. Code § 16.1-05-07(3) (requiring election officials to "direct an individual who is attempting to vote in the incorrect precinct ... to the proper precinct and polling place").
It seems unlikely that the injunction would enable voter fraud by someone who resides outside North Dakota but maintains a P.O. Box within the state. In order to vote, such a person would still need either a tribal identification "issued by a tribal government to a tribal member residing in [the] state ," id. § 16.1-01-04.1(3)(a)(2) (emphasis added), or an identification issued by the state itself, id. § 16.1-01-04.1(3)(a)(1). Neither of these documents could be issued to a non-North Dakota resident.
In contrast, the injury to plaintiffs and other North Dakota voters is likely to be severe and irreparable. "[T]he right of suffrage is a fundamental matter in a free and democratic society." Reynolds v. Sims, 377 U.S. 533, 561-62, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). "[T]he right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights," and therefore "any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." Id. at 562, 84 S.Ct. 1362. I disagree that plaintiffs are unlikely to be injured simply because they all have residential street addresses. As the court notes, "the statute at issue does not merely require a citizen to maintain a residential street address," but to obtain and produce identification reflecting that address. And the court does not dispute that several plaintiffs testified that they lack a valid form of identification under the statute. As noted above, the evidence indicates that many other eligible voters will be disenfranchised absent further equitable relief.
The final stay factor is the interest of the public. We previously denied the Secretary's request for a stay in this very case because there was an election only a week away. And absentee voting for the November election begins in less than a week. To grant a stay now fails to properly weigh the unique "considerations specific to election cases" that apply when a party seeks to upset the status quo "just weeks before an election." Purcell, 549 U.S. at 4, 127 S.Ct. 5. The stay will require North Dakota to reevaluate its training of election officials, training which may again change should the district court enter further injunctive relief. See R. Doc. 45 at 12-15 (the Secretary explaining that revising election *565 training materials takes several months). The confusion that may result from these "conflicting orders," Purcell, 549 U.S. at 4-5, 127 S.Ct. 5, could be easily avoided by keeping the injunction in place until resolution of the appeal after the November election.
For the foregoing reasons, I would conclude that the Secretary has not met his burden of establishing that a stay is warranted.

I concur in the denial of the motion to strike as moot.

The district court properly took judicial notice of the state's official website. See Missourians for Fiscal Accountability v. Klahr, 830 F.3d 789, 793 (8th Cir. 2016) (citing Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 648 (7th Cir. 2011), for "the authority of a court to take judicial notice of government websites"). The Secretary was on notice since at least 2016 that the district court might rely upon this website: plaintiffs cited to it in their initial motion for a preliminary injunction, and the Secretary did not object. See R. Doc. 44 at 10, 12. It appears that the Department of Transportation has since changed its website such that it no longer reflects a fee for those 18 years old or older. Compare N.D. Dep't of Transp., ID Card Requirements, https://www.dot.nd.gov/divisions/driverslicense/idrequirements.htm (last visited Sept. 21, 2018), with N.D. Dep't of Transp., ID Card Requirements, https://web.archive.org/web/20180218061057/ https://www.dot.nd.gov/divisions/driverslicense/idrequirements.htm (archived Feb. 18, 2018).

The court cites a different document from the Department's website listing nine "[a]cceptable documents for proof of North Dakota resident address," but the document does not explain whether these can be used to obtain an identification card. It would be speculation to suggest that this more expansive list supercedes the express requirements for obtaining an identification noted above. At best, the issue is unclear.

I do not read the court's opinion to foreclose these options, which would apply beyond the six plaintiffs. This court is not in a position to review the propriety of the affidavit option, because even though the district court reinstated the affidavit option in its first injunction and the Secretary did not appeal that decision, that injunction was dissolved upon the passage of new legislation and the granting of the second injunction.