# SUPREME COURT OF THE UNITED STATES

_____

No. 20A67

_____

## JOHN H. MERRILL, ALABAMA SECRETARY OF STATE, ET AL. *v.* PEOPLE FIRST OF ALABAMA, ET AL.

ON APPLICATION FOR STAY

[October 21, 2020]

The application for stay presented to JUSTICE THOMAS and by him referred to the Court is granted, and the district court's September 30, 2020 order granting a permanent injunction is stayed pending disposition of the appeal in the United States Court of Appeals for the Eleventh Circuit and disposition of the petition for a writ of certiorari, if such writ is timely sought. Should the petition for a writ of certiorari be denied, this stay shall terminate automatically. In the event the petition for a writ of certiorari is granted, the stay shall terminate upon the sending down of the judgment of this Court.

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER and JUSTICE KAGAN join, dissenting from grant of stay.

This stay application arises from the Alabama secretary of state's decision to ban curbside voting despite the ongoing COVID–19 crisis and the willingness of certain Alabama counties to assist voters with disabilities. Following a lengthy trial and resting on an extensive record, the District Court found, among other things, that the secretary's ban violates the Americans with Disabilities Act (ADA) by forcing voters with disabilities, for whom COVID–19 is disproportionately likely to be fatal, to risk unnecessary exposure to the virus if they wish to vote in person. The District Court enjoined the secretary's ban, thus allowing counties that are ready to adopt curbside voting to do so. I would not

upset the District Court's record-based, reasoned, and narrowly tailored judgment, which the Court of Appeals for the Eleventh Circuit let stand.[1]

The severity of the COVID–19 pandemic should, by now, need no elaboration. As of October 20, 2020, Alabama's Department of Public Health has identified 174,528 cases of COVID–19 in the State, leading to 19,801 hospitalizations and 2,805 deaths.[2] Those figures include about 37,000 new cases and 400 more deaths since the District Court issued its findings of fact less than a month ago. See ___ F. Supp. 3d ___, ___, 2020 WL 5814455, *2 (ND Ala., Sept. 30, 2020). COVID–19 presents particularly serious risks for those with chronic medical conditions. As Alabama State Health Officer Dr. Scott Harris warned, "'[c]hronic disease factors are a real risk for dying from this disease, and chronic diseases are found in about a third of our citizens.'" *Id.*, at *4. Over 95 percent of Alabamians who have died from COVID–19 had underlying health conditions that made them especially vulnerable to that virus. *Ibid.*

To combat the spread of COVID–19, the Centers for Disease Control and Prevention recommend that States consider curbside voting, that is, permit voters to vote from their car by handing their ballot to a poll worker. *Id.*, at *34. This is no radical recommendation: The Department of Justice has sanctioned curbside voting as a remedy to ADA violations, see Dept. of Justice, Project Civic Access Fact Sheet, https://www.ada.gov/civicfac.htm, and some 28 States and the District of Columbia already permit curbside voting, see App. to Brief for American Diabetes Association

---

[1] The District Court also held that the ban on curbside voting violates the plaintiffs' fundamental right to vote under the First and Fourteenth Amendments. Because I believe the injunction was appropriate under the ADA, I do not address the constitutional issues.

[2] Alabama Dept. of Public Health, Characteristics of COVID–19 Cases (Oct. 20, 2020), https://www.alabamapublichealth.gov/covid19/assets/cov-al-cases-102020.pdf.

et al. as *Amici Curiae* 1–3. The Alabama secretary of state, however, has prohibited counties from offering curbside voting, even for voters with disabilities for whom COVID–19 is disproportionately likely to be fatal. If those vulnerable voters wish to vote in person, they must wait inside, for as long as it takes, in a crowd of fellow voters whom Alabama does not require to wear face coverings. See ___ F. Supp. 3d, at ___, 2020 WL 5814455, *8.

On May 1, 2020, several at-risk Alabama voters and associated organizations sued to enjoin that ban, along with other restrictive voting laws not at issue here. The District Court expedited discovery and held a trial from September 8 to 18. *Id.*, at *2. Based on the trial evidence, the District Court concluded, in relevant part, that the secretary's ban on curbside voting violated the ADA and that a policy allowing, but not requiring, counties to implement curbside voting was a reasonable accommodation. The Eleventh Circuit upheld that portion of the District Court's injunction. See *People First of Ala.* v. *Secretary of State for Ala.*, 2020 WL 6074333, *1 (CA11, Oct. 13, 2020). The secretary, among others, now seeks a stay of that decision.

I would deny the stay. The secretary has not shown any legal error below. We should not substitute the District Court's reasonable, record-based findings of fact with our own intuitions about the risks of traditional in-person voting during this pandemic or the ability of willing local officials to implement adequate curbside voting procedures.

The District Court for good reason found that the secretary's ban deprives disabled voters of the equally effective "opportunity to participate in" the "benefit" of in-person voting. 28 CFR §35.130(b)(1)(ii) (2019). The secretary does not meaningfully dispute that the plaintiffs have disabilities, that COVID–19 is disproportionately likely to be fatal to these plaintiffs, and that traditional in-person voting will meaningfully increase their risk of exposure. He argues only that the relevant "benefit" under the ADA is voting

generally, not in-person voting specifically, and that absentee voting ensures access to that benefit. But under the ADA, "[t]he benefit itself . . . cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled." *Alexander* v. *Choate*, 469 U. S. 287, 301 (1985). In-person voters receive assistance from poll workers; need no witnesses, notaries, or copies of their photo IDs, as Alabama law requires for absentee ballots; and know their ballot will not arrive too late or be rejected for failure to comply with absentee ballots' many requirements. ___ F. Supp. 3d, at ___, 2020 WL 5814455, *59–*60. Absentee and in-person voting are different benefits, and voters with disabilities are entitled to equal access to both.

The District Court's modest injunction is a reasonable accommodation, given the short time before the election. It does not require all counties to adopt curbside voting; it simply gives prepared counties the option to do so. This remedy respects both the right of voters with disabilities to vote safely and the State's interest in orderly elections. The District Court's compromise likewise does not risk creating "voter confusion and consequent incentive to remain away from the polls." *Purcell* v. *Gonzalez*, 549 U. S. 1, 4–5 (2006) (*per curiam*). The injunction lifts burdensome requirements rather than imposing them, and permits county officials to help educate voters about whether curbside voting is available in their county. See ___ F. Supp. 3d, at ___, 2020 WL 5814455, *44. Moreover, the injunction neither invalidates state law nor prohibits the secretary from issuing guidance consistent with the District Court's ruling. *Id.*, at *45, *61–*62.

Plaintiff Howard Porter, Jr., a Black man in his seventies with asthma and Parkinson's Disease, told the District Court: "'[S]o many of my [ancestors] even died to vote. And while I don't mind dying to vote, I think we're past that – we're past that time.'" *Id.*, at *11, *15. Election officials in

SOTOMAYOR, J., dissenting

at least Montgomery and Jefferson Counties agree. They are ready and willing to help vulnerable voters like Mr. Porter cast their ballots without unnecessarily risking infection from a deadly virus. This Court should not stand in their way. I respectfully dissent.