# SUPREME COURT OF THE UNITED STATES

———————

No. 23A994

———————

PRESS ROBINSON, ET AL. *v.* PHILLIP CALLAIS, ET AL.

ON APPLICATION FOR STAY

———————

No. 23A1002

———————

NANCY LANDRY, SECRETARY OF STATE OF
LOUISIANA, ET AL. *v.* PHILLIP CALLAIS, ET AL.

ON APPLICATION FOR STAY

[May 15, 2024]

The applications for stay presented to JUSTICE ALITO and by him referred to the Court are granted. See *Purcell* v. *Gonzalez*, 549 U. S. 1 (2006). The April 30, 2024 order of the United States District Court for the Western District of Louisiana, case No. 3:24–cv–00122, is stayed pending the timely docketing of the appeal in this Court. Should the jurisdictional statement be timely filed, this order shall remain in effect pending this Court's action on the appeal. If the appeal is dismissed, or the judgment affirmed, this order shall terminate automatically. In the event jurisdiction is noted or postponed, this order will remain in effect pending the sending down of the judgment of this Court.

JUSTICE SOTOMAYOR and JUSTICE KAGAN would deny the applications for stay.

JUSTICE JACKSON, dissenting from grant of applications for stay.

These emergency applications arise from a complex series of cases about what district lines Louisiana voters should use to select their Congressional Representatives. Over

more than two years of litigation, separate groups of voters have challenged Louisiana's congressional maps, first for violating §2 of the Voting Rights Act and now for violating the Equal Protection Clause of the Constitution. The Louisiana Legislature, two Governors, civil rights organizations, voters, and jurists at every level of our federal system have weighed in on these challenges. That careful scrutiny is fitting: The question of how to elect representatives consistent with our shared commitment to racial equality is among the most consequential we face as a democracy.

The question before us today, though, is far more quotidian: When does Louisiana need a new map for the November 2024 election? Redistricting raises unique and unusual timeliness concerns, with important deadlines weeks and even months before an election. The three-judge District Court in this action, after holding a full merits trial and finding the current map unconstitutional, scheduled the imposition of a remedial map for no later than June 4. In doing so, it rejected the State's argument that the real deadline for settling on a map is May 15. The State now renews those arguments before us, asserting that waiting any longer will result in irreparable harm, namely, "election chaos." Emergency Application in No. 23A1002, p. 19. The Court appears to credit the State's arguments, relying on the so-called *Purcell* principle that courts making changes to election procedures close to an election must consider the possibility of "voter confusion." *Purcell* v. *Gonzalez*, 549 U. S. 1, 4–5 (2006) (*per curiam*).

In my view, *Purcell* has no role to play here. There is little risk of voter confusion from a new map being imposed this far out from the November election. In fact, we have often denied stays of redistricting orders issued as close or closer to an election. See *Merrill* v. *Milligan*, 595 U. S. ___, ___–___ (2022) (KAGAN, J., dissenting from grant of applications for stays) (slip op., at 10–11) (collecting cases). Of course, administrative difficulties may occur if a new map

JACKSON, J., dissenting

is imposed late in an election cycle. But, as the Fifth Circuit noted in rejecting similar *Purcell* arguments by the State in advance of the 2022 election, "'[i]f time presses too seriously, the District Court has the power appropriately to extend' . . . deadline[s] and other 'time limitations imposed by state law.'" *Robinson* v. *Ardoin*, 37 F. 4th 208, 230 (2022) (*per curiam*) (quoting *Sixty-seventh Minnesota State Senate* v. *Beens*, 406 U. S. 187, 201, n. 11 (1972) (*per curiam*)).

Rather than wading in now, I would have let the District Court's remedial process run its course before considering whether our emergency intervention was warranted.* Therefore, I respectfully dissent.

---

*In a separate application, intervenors from the earlier Voting Rights Act litigation allege that they will face irreparable harm if subjected to another election under a map that likely violates §2. See Emergency Application in No. 23A994, p. 40. That harm is serious, but it was, at the time of these emergency filings, highly contingent. The District Court has not yet selected a remedial map, and, were it not for this Court's intervention, it may have selected a map that complies with both §2 and the Equal Protection Clause. I would have waited until after the remedial process concluded (when it would have been clearer if the intervenors' faced irreparable harm) to consider their arguments.